Good morning, Your Honors. I would like to reserve 3.5 minutes for rebuttal. Your Honor, this case involves an individual who has been residing in the United States since 1985. She has once exited a brief time for 45 days. She has a spouse who is a lawful permanent resident. And she has two United States children who at this time are ages 15 and 12. They're born here? Yes, Your Honor. On August 30, 1995, the immigration, the then Immigration and Naturalization Service, issued an order to show cause. The petitioner appeared before the immigration judge, and on June 27, 1996, the immigration judge denied her suspension of the deportation application under Section 244 of the Act. The judge made this decision based on a mistaken belief that her 45-day absence was not a brief casual instance. Almost 5 years later, Your Honor, on April 24, 2001. Was it 45 days? I thought it was 30 days. If it's 45 days or 30 days, Your Honor, I don't think that would be material. I was under the impression it's 45 days. I apologize if I'm mistaken. No, no. I don't know. I'm just asking you.  It's 45 days. It's 45 days. Yes, Your Honor. So almost 5 years later, the Board of Immigration Appeals finds that the judge's decision that her departure was not brief casual instance was an error, and they remanded it to the immigration judge so he can make a finding on her suspension of deportation application. For her suspension of deportation application, Your Honor, she had to show that she was residing in the United States for 7 years. Those 7 years she accumulated prior to the issuance of the order show cause. She now has been residing in the United States for almost 16 years. Excuse me. At the time she the case was remanded, she had been residing in the United States almost 16 years. There was no issue of good moral character, and her children at that time were 12 and 9 years old, both United States citizens. In the interim of while the Board of Immigration Appeals filing, the petitioner moved. When she moved, she did two things, Your Honor. She filed a change of address, and she left the responsible individual at her residence to collect her mail. The court sent the notice of the hearing to the old address. The notice of hearing was not received. It was not rejected by anyone. It was returned to the court. It is in the court's file. In support of assertion that she did not receive the notice, she submitted a declaration. She submitted a copy of the notice to appear for deportation, which she received at the same address, and there is the return which the court acknowledged, the immigration judge, that the notice of hearing was returned. However, the immigration judge denied the application in a conclusionary fashion, saying that the presumption had not been met. Well, I thought she, somewhere I read she said she submitted a change of address for her. Yes, Your Honor. And it's not clear why that change of address was not properly either filed or processed by the court. Can you tell us what form she filed and to whom she gave it? She placed it in the mail, Your Honor. She placed it in what? It was a form, and she's not clear as to what type of form it is. That's the question I have. Was it just a post office form that expires after 6 months? It was not clear. Was it a notice form on an INS change of address form that she submitted to the service, to the board? In my discussion with the client, Your Honor, it's not clear. Her level of education just simply says, you know, it was a form. I had to fill out my old address, my new address, and I sent it in to the mail and had to mail it in. But we mailed it in. Yes, Your Honor. Did she have a lawyer at that time? It's interesting, Your Honor. She believed she had a lawyer. However, the notice of appeal was filed in pro per. And when she was before the immigration judge, she did have a lawyer. There was a properly executed U.R. 28. The lawyer was never removed from the case. When it went up to the appeal, she believed she had a lawyer, but apparently was filed in pro per. Arguably, it could have been prepared by a notary. However, Your Honor, there was no prejudice to her because she was successful in her appeal. So when it was remanded to the judge, before the judge, she had previously been represented by an attorney, and there is no indication that that prior attorney received a notice to inform her of the hearing date. If we look at the immigration judge's decision, Your Honor. To inform her of what? Of the hearing date, Your Honor. Of the hearing date. If we look at the immigration judge's decision, there is no analysis, no consideration of the evidence submitted. Ms. Chete submitted her declaration. She was corroborated by the receipt of the deportation that was at the same address and by the return of the hearing notice to the court. So this is now a motion for reconsideration? A motion to rescind it in absentia, Your Honor. Correct, Your Honor. Okay. So that's the ruling that we're now reviewing, whether he abused his discretion in refusing to reopen. Correct, Your Honor. Okay. And it's our position that he abused his position when he failed to consider in any meaningful way whether or not she agreed by the presumption. There's this Court recently in Andea found that they remanded for lack of notice consideration. They found when the judge did not make her finding on this and it was not properly on appeal. However, Your Honor, that is, in essence, an affirmation of a regetta v. INS, where the Court specifically found that the BIA erred when it stated that the letter was not substantial and probative. In this instance, Your Honor, in the judge's decision, there is no finding whatsoever up to what consideration, if any, he gave. He indicates or submitted an affidavit saying that she failed to appear because of lack of notice. The Respondents claim that she failed to receive notice of her scheduled hearing. The Court notes the notice of hearing was returned to the Court. However, the Court then goes on to say that this is not – there has been no rebuttal. There is no nexus that his decision based at the presumption was rebutted was related in any way to the evidence presented. Well, did the lawyer who got the notice appear at the hearing? The lawyer who got the notice? No, Your Honor. No attorney received the notice. No attorney received the notice. No, Your Honor. The only notice that was sent was to her last known address, where there was a responsible individual, arguably by her receiver. I'm sorry. I'm thinking of another case, okay? We've got a whole bunch of these. Okay. Well, thank you, Your Honor. I would like to reserve at this time the remaining time. We're going to let you pick out all the good pieces from the six or seven cases we have. Oh, great. Counsel, let me just ask you one factual clarification. Didn't the immigration judge discredit her affidavit as part of his analysis? No, Your Honor. I believe the Respondents discredited it, but there's no analysis made in there. I believe the Respondent has asserted that it's a self-serving declaration. But in the judge's decision, there is no analysis as to what weight, if any, he gave. Okay. He mentions it. So he doesn't specifically say, I basically don't believe it or I don't find it credible. No, Your Honor. Okay. All right. He just makes an inclusionary statement. There was no evidence and the presumption has not been rebutted. Okay. You know, but the same factors. The same factors, Your Honor? Yes. For? You know, there's five of them. Petitioner had diligently appeared for her prior hearings. The missed hearing was the culmination of lengthy effort to obtain legal status. Deportation would break up Petitioner's family. I believe that. Petitioner had no motivation to delay the hearings. The I.J. likely would have granted relief from deportation. Yes, Your Honor. Thank you for reminding me. Those issues I believe I brought up on my brief. And in this instance, she is successful, Your Honor. She has previously showed up to court where she would be intimidated by not knowing the process, and she is denied. She goes on appeal and is successful on her appeal. Her case, Your Honor, is a strong case. Her children at that time, as I previously indicated, were 12 years old and 9 years old. She had a lengthy residence. She had no reason to fear going. Her family would stay here, and I think if we look at the same merits, this case would be one that would fall under those categories. This is a compelling fact. So the only real issue that the I.J. would have had to decide would be extreme hardship, because she meets all the other criteria. Yes, Your Honor. The question would be whether separating her from, at that time, what did you say they were? 12 and 9 years old, Your Honor. Would be extreme hardship. Yes, Your Honor. Okay. And the judge in the old suspension case could also take in the hardship that she would suffer after having resided in the United States for such a long time.  Thank you, Your Honor. Thank you. Good morning. May it please the Court. My name is Luis Perez and I represent the Respondent in this case. Your Honor, in the present case, the immigration judge specifically considered the evidence submitted by Ms. Chete Juarez. Ms. Chete Juarez only submitted an affidavit to rebut the strong presumption of effective service of the notice of hearing. In fact, on the second paragraph of the immigration judge's decision, the immigration judge acknowledged the fact that she submitted the affidavit and that her argument basically consisted in the fact that she did not receive notice. On the second page of the immigration judge's decision, the second paragraph of it, the immigration judge held that the reasons stated in her affidavit were insufficient to rebut the strong presumption of effective service. Now, the immigration judge is specifically citing to the Board of Immigration Appeals decision in matter of rehalba. In rehalba, the Board of Immigration Appeals held that... Now, does the service send out a, do they request a receipt, you know, return receipt request? Yes. On pages 80 and 96 of the administrative record, it is reflected that a certified mail was sent to her last known address in the record. So because service was made or attempted at the last known address, then the strong presumption of effective service of rehalba arises. She says she sent in a change of address. Yes. If you're going to change your address, usually just put it in the mailbox so the postman picks it up. Your Honor, the point in rehalba is that, in fact, Ms. Chete Juarez can rebut that presumption, she has to present substantial and probative evidence. Now, what is substantial and probative evidence? She, an example of that would be a third-party affidavit or documents from the Postal Service indicating that service, that service was not delivered. And the question is whether the declaration that she provided to the immigration judge is substantial evidence of non-delivery. Now, in Arrieta v. INS in 1997, this Court upheld the presumption established in matter of rehalba. In that case, Your Honors, the Court remanded the case back to the immigration judge because rehalba had not been decided at the time Ms. Arrieta filed the motion to reopen. So it was not clear what was the burden of proof that she needed to meet. In this case, at the time Ms. Chete Juarez filed her declaration, it was clear what was the burden of proof, substantial evidence. In Arrieta, the Court also points out what is the standard an alien needs to meet in order to rebut that presumption. For example, an alien can establish that her mailing address has remained unchanged. Now, during her, during the oral argument of petitioner, she stated that her mailing address remained unchanged because she had conferred on someone the responsibility of receiving mail from her. But in her statement, that is not reflected. In her statement before the immigration judge, she only indicated that she visited her former community and that a good neighbor notified her that she had mail from the INS. That is clearly not indicative that she had conferred on this person that responsibility. So her case is distinguishable from Arrieta, where Ms. Arrieta not only conferred on her brother the responsibility of receiving mail at her previous address, but her brother submitted an affidavit corroborating that indication. Also, I don't really know whether her former address or her current address is a house or a townhouse or a condominium, but the point is that if she continued to receive mail at her former address, in accordance to Arrieta, at least she needed to indicate in her declaration that she had conferred on someone that responsibility of receiving mail, and because it was not apparent in her declaration, her case is distinguishable from Arrieta. The only indication, what Ms. Chetehuari indicates in her declaration is that she changed her address and that she filled out an address form. It is not clear from the declaration whether that address form was another form addressed to the Executive Office of Immigration Review, whether it was an address form directed to the Immigration and Naturalization Service or to the Postal Office. Maybe it was to the Executive Office of Immigration Review, but it's not clear, it's not apparent from her declaration. The evidence that the immigration judge had at that time only stated that she had filled out a change of address form. The change of address form is not in the record. She did not provide a copy of it with her affidavit. It may not be in the record, but, you know, the INS loses a lot of pieces of paper and they get misfiled and all that, I think. You know, at least I think I can, for myself, I'd take some judicial notice of that. Sure, Your Honor. But what about these Singh factors? Yes, Your Honor. Singh is distinguishable from this case. Well, let's go through the factors. Sure. Yes. Rajiv Singh v. INS is distinguishable from this case because in that case, the alien, Mr. Singh, was eligible to adjust his status because he had an about. Let me ask you a question. Had she diligently appeared for her prior hearings? Yes, Your Honor, that is correct. And was the missed hearing a culmination of lengthy effort to obtain legal status? Yes. Sure, Your Honor. Of course. And would the deportation break up the family? Yes, of course. And would she have any motivation to delay the hearing? No, Your Honor. No. And would it be likely that the IJA would have granted relief from deportation? No. How do you know that? Because, Your Honor, this is the difference between this case and Singh. In Singh, what was before the Court was a person who was eligible to adjust his status because he had an approved I-130 visa petition. And all she's eligible to adjust her status, isn't she? No. She only the Board of Immigration Appeals in this case only held that she had met the physical presence from for suspension of deportation. Why wouldn't she be eligible for adjustment status? Do you mean for by qualifying for suspension of deportation? No. Well, there is no proper evidence that she can meet the extreme hardship requirement, not the good moral character requirement. So she has to present that evidence in the first instance before the immigration judge. It is not clear right now. She never had a chance to do that. Yes, Your Honor. I know that. But the Singh case, as Chief Justice Schroeder pointed out, is a highly unusual case, because in the Singh case, it was clear that no order of deportation would have resulted had Singh been present at that hearing. Because he was eligible, the INS considered that any finding of discretion would have been favorable towards Singh. Why wouldn't she be eligible? She's lived here for how many years? I am not disputing that she's eligible or not eligible. I'm only trying to state that. In other words, you think it was a loser in the end. No. I'm just saying that in order for Singh to apply in this case, it would have to be an alien who is clearly eligible for the relief granted, that any exercise of discretion would have been favorable, that it would have been impossible for an order of deportation to have been issued in that case. And in Singh, it was clear. It was undisputed by both parties that that was the case. In fact, in Singh, the Court makes reference to its decision in Sharma. But you want to limit Singh to a very narrow set of circumstances. That was how Chief Justice Schroeder characterized it at the beginning of the case. Well, no, she didn't say that. What did she say? She said that this is a highly unusual case. Every case we get is highly unusual. This is highly unusual. Every case is unique. I agree with you, Your Honor. I mean, you're highly unusual. Thank you, Your Honor. I take that the good way. Sure. But remember that Singh was a case of the issue in Singh was not whether the service had been made properly. It was a case of exceptional circumstances. Whether the absence, whether exceptional circumstances, would exceptional circumstances basically would have excused the absence. And exceptional circumstances did in Singh because it was a case that the alien would have won because he was clearly to have been found illegible. The INS conceded that any discretion would have been favorable toward the alien. So I guess your point is that if you distinguish Singh on the basis that if it was only a mere possibility that she might have been granted suspension of removal, whereas Singh was clearly entitled to it, then this is a different case. Yes. Okay. Because she had not been found illegible for suspension of deportation. The Board only held that she had met one of the three prompts for suspension of deportation. And the point that I wanted to make was that the Court also made reference to Sharma where the Petitioner only needed a discretionary grant for asylum. And the Court noted the difference that a discretionary grant for asylum was not a granting of asylum and established that in that case or mentioned that in that case exceptional circumstances had not been met. And that is also, that is pointed out in the, in Chief Schroeder's decision in Singh. So the point is, Your Honor, the Court has to look at the evidence she submitted in her motion to reopen and determine whether that evidence is substantial evidence to rebut the presumption of Grijalva. Now, in Grijalva, the Board specifically said that. Kennedy, you're over your time. Oh, sorry. Two minutes and 41 seconds. Why don't you bring it to a close? Oh, yes, Your Honor. Thank you. Thank you. I know my time is almost up. I'd just like to respond to one thing. We're asking this Court to affirm its prior decisions. In Arieta, the BIA, the Court specifically said that the BIA erred when they stated the letter was not substantial and provident evidence. In this instance, the immigration judge didn't even consider or state what weight he gave to that. Thank you, Your Honor. The what, the letter? He did not even indicate what weight, if any, he was giving to the letters, which courts have indicated are substantial and provident. Oh, the letters, okay. Thank you, Your Honor. All right. Thank you. The matter stands submitted.
judges: Goodwin, Pregerson, Tallman